**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FLOYD ERIC DRAINE,** | * | |
| | * | |
| **Plaintiff,** | * | **Civil Action No. 12-00725-B** |
| | * | |
| **vs.** | * | |
| | * | |
| **CAROLYN W. COLVIN,**[1] | * | |
| **Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**ORDER**

Plaintiff Floyd Eric Draine (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 9, 2013, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 17). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.     **Procedural History**

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on November 23, 2009. (Tr. at 76-77). Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

alleges that he has been disabled since September 8, 2008, due to chronic pain related to a gunshot wound to his abdomen in September 2008, high blood pressure, and mental problems.[2] (Id. at 177, 201). Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Ben Sheely (hereinafter "ALJ") on April 1, 2011. (Id. at 52). At the hearing, Plaintiff requested a consultative examination to address his problems with leg and abdomen pain. (Id. at 54). The ALJ granted the request, and the hearing was recessed until August 29, 2011. (Id. at 33). Plaintiff attended the second hearing with his counsel and provided testimony related to his claims. (Id. at 37). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 48). On September 15, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 19-28). The Appeals Council denied plaintiff's request for review on October 5, 2012. (Id. at 1). The parties waived oral argument (Doc. 18), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  **Issues on Appeal**

> A.  **Whether substantial evidence supports the ALJ's RFC assessment?**
>
> B.  **Whether the ALJ erred in evaluating Plaintiff's complaints of pain?**

III.  **Factual Background**

Plaintiff was born on July 24, 1964, and was forty-seven years of age at the time of his administrative hearing on August 29, 2011. (Tr. 37, 173). Plaintiff testified at the hearing that he graduated from high school and has worked as a truck driver and as a barber. (Id. at 38-39).

---

[2] Although Plaintiff listed each of these medical conditions in his initial application, his claim before the ALJ and this Court has been based solely on chronic low back pain, leg pain, and abdominal pain related his 2008 gunshot injury. (Tr. at 36; Doc. 14 at 1).

At the time of the hearing, Plaintiff was working part-time as a barber, three days a week for three hours a day.  (Id. at 39).  Plaintiff reported that in addition to working part-time as a barber, he takes care of his father, including preparing meals and helping him get in and out of the bath tub.  (Id. at 42).

According to Plaintiff, he can only work part-time because his pain is too severe for him to work all day.  (Id. at 40).  Plaintiff testified that he has constant back pain that goes down his leg and stomach pain that necessitates him lying down up to three times a day, for thirty to forty minutes at a time.[3]  (Id. at 40, 42, 47).  Plaintiff further testified that he takes Mobic for pain, but his pain level is still an eight out of ten on the pain scale on a daily basis.  (Id. at 44).  Plaintiff stated that he can lift no more than fifteen pounds, that he can walk for only twenty minutes at a time, and that he can sit for only thirty minutes at a time before he has to get up and stretch.  (Id. at 45-46).

## IV.    Analysis

### A.    Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are

---

[3] Plaintiff testified that he works part-time as a barber at his sister's place of business, that he works at his own pace, and that he is able to lie down if he needs to do so.  (Tr. at 47-48).

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.    Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[5] 20 C.F.R.

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. <u>Id.</u> Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 8, 2008, the alleged onset date, and that he has the severe impairments of status post gunshot wound to the abdomen with residual low back pain after trauma. (Tr. 24). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work except that he can sit no longer than thirty minutes at one time and can engage in no more than occasional stooping or bending. (Id. at 25). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not credible to the extent that they were inconsistent with the RFC. (Id.).

Given Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing his past work as a barber. (Id. at 26). In addition, in the alternative, the ALJ, utilizing the testimony of a VE, concluded that considering Plaintiff's residual functional capacity for a range of light work, as well as his age, education and work experience, that there are also other jobs existing in the national economy that Plaintiff is able to perform, such as "cashier" (light, unskilled, SVP 2), "assembler" (light, unskilled, SVP 2), and "information clerk" (light, unskilled, SVP 2). (Id. at

---

functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

27-28).  Thus, the ALJ concluded that Plaintiff is not disabled.  (Id.).

## 1. Medical Evidence

The medical records reflect that on February 12, 2008, Plaintiff presented to Dr. Ruben Belen at the Mobile County Health Department with complaints of a history of rectal bleeding and knee joint pain.  (Id. at 294).  Dr. Belen's assessment was that Plaintiff had knee joint pain, intramural small intestinal hemorrhage, inguinal hernia, and high cholesterol.  (Id. at 295).  Dr. Belen recommended that Plaintiff consult with a GI specialist and prescribed Mobic as needed for pain.  (Id.).  Dr. Belen also instructed Plaintiff to return for a follow up examination in three months.  (Id.).

Seven months later, on September 10, 2008, Plaintiff presented to the emergency room at USA Medical Center for treatment of a gunshot wound to the left abdomen.  (Id. at 267). Plaintiff underwent surgery to repair injuries to his small bowel.[6]  (Id.).  Plaintiff's medical records reflect that he was discharged from the hospital on September 13, 2008, in stable condition, and that upon discharge, his elimination, feeding, and locomotion capabilities were independent; his rehabilitation potential was good; his prognosis was good; he was on a regular diet; and he could engage in physical activity as tolerated.  (Id. at 268).  Plaintiff was instructed to follow up at the Stanton Road Clinic in seven to ten days.  (Id.).

On September 29, 2008, Plaintiff was treated by Dr. Belen at the Mobile County Health Department.  Dr. Belen's notes reflect that Plaintiff "has a surgical incision scar . . . which is healing well."  (Id. at 292).  Plaintiff reported pain in his abdomen upon movement but not upon palpation, and he requested a medication refill.  (Id.).  Dr. Belen noted that Plaintiff was in no acute distress, that he was not feeling tired or poorly, and that he had no fever, no headache, no

---

[6] The Operative Report indicated that seven feet of Plaintiff's small bowel were "resection[ed]," but there were no injuries to Plaintiff's colon, liver, spleen, kidneys, or stomach.  (Tr. 273).

chest pain or discomfort, no difficulty breathing, no joint pain, and no depression. (Id.). His physical examination was largely normal, with the exception of his abdomen, which was noted to be "healing well." (Id. at 293). Plaintiff reported a pain level of three out of ten on that date. (Id. at 292). He was prescribed Tylenol #3 as needed for pain and Lipitor for high cholesterol. (Id. at 293).

Plaintiff returned to Dr. Belen six months later, on March 18, 2009, for a follow up examination. Dr. Belen noted that Plaintiff's examination was normal in all respects, that he had no abdominal pain, that he was not feeling tired or poorly, and that he was in no acute distress. (Id. at 290). Plaintiff's only complaint was knee joint pain, which he described as a three out of ten on the pain scale. (Id.). Dr. Belen refilled Plaintiff's medications[7] and instructed him to return in two months. (Id. at 289-91).

On May 12, 2009, Plaintiff was examined by a nurse practitioner at the Mobile County Health Department. Plaintiff reported a burning sensation, blood in his stool, and a pain level of zero out of ten. Plaintiff denied any abdominal or localized joint pain. (Id. at 285-88). The nurse's examination of Plaintiff was largely normal and he was treated for constipation and high blood pressure and instructed to change his diet, increase his physical activity, and return in one month. (Id. at 289).

On November 3, 2009, Plaintiff was seen by Dr. Gregory Evans at the Mobile County Health Department. Plaintiff reported low back pain and right flank pain. (Id. at 283). Dr. Evan's examination was largely normal, except for notations that Plaintiff was reporting abdominal pain in the right upper quadrant and lower back pain. (Id. at 282-83). Dr. Evans noted that Plaintiff's abdomen revealed no abnormalities, and prescribed Naprosyn and Darvocet

---

[7] At that time, Plaintiff was taking Tylenol #3 as needed for pain, Lipitor for high cholesterol, and Chantix for smoking. (Tr. 291).

as needed for pain. He also continued Lipitor for high cholesterol. (Id. at 283, 285 5). In addition, Dr. Evans ordered an x-ray of Plaintiff's abdomen and pelvis on November 4, 2009, the results of which were "unremarkable." (Id. at 341).

On November 17, 2009, Plaintiff returned to Dr. Evans and reported blood pressure problems. (Id. at 277). His physical examination was normal, including his abdomen, and Dr. Evans noted that he was in no acute distress, that he had no abdominal pain, no back pain, and no localized joint pain. (Id. at 278). Plaintiff reported a pain level of zero out of ten on that date. (Id.). An x-ray taken of Plaintiff's chest on that date was "normal." (Id. at 340). Dr. Evans' assessment was that Plaintiff's blood pressure was elevated, that he had blood in his urine, and that he had high cholesterol. (Id. at 281).

On December 1, 2009, Plaintiff returned to Dr. Evans for a follow up examination, which was largely normal, and Dr. Evans noted that Plaintiff was not feeling tired or poorly, that he was in no acute distress, that he had no abdominal pain, and no back pain. (Id. at 276). Plaintiff reported a pain level of zero out of ten. (Id.). Dr. Evans' assessment was that Plaintiff had pain localized to one or more joints, high cholesterol, and obesity. (Id.). Dr. Evans recommended a consultation with a dietician and an ophthalmologist. (Id. at 277).

The record reflects that Plaintiff had follow-up visits with Dr. Evans on January 25, 2010, February 3, 2010 and March 29, 2010. (Id. at 349-53, 356) . During these visits, Plaintiff's physical examinations were generally normal, including his abdomen, he listed his pain level as a two or three, and he was assessed with pain localized to one or more joints, high blood pressure, coronary artery disease, obesity, arthropathy and backache. Id.

On October 4, 2010, Plaintiff was seen at the emergency room at USA Medical Center. He reported left hip pain that radiated down his thigh. (Id. at 411). Following an examination,

Plaintiff was diagnosed with degenerative joint disease and lumbar disc disease. (Id. at 412). An x-ray of Plaintiff's left femur was unremarkable, although the radiologist noted degenerative changes of the left knee joint. (Id. at 418). Plaintiff was discharged home with Naprosyn and Flexeril for pain and instructions to follow up with his primary care physician for a possible MRI of his L-spine. (Id. at 412-13).

On October 27, 2010, Plaintiff was referred to Dr. Roger Setzler at the Alabama Orthopaedic Clinic for his complaints of back and leg pain. (Id. at 449). Upon examination, Dr. Zetzler noted that Plaintiff was completely intact neurologically with normal reflexes, normal sensation, normal strength, and a negative straight leg raise, although Plaintiff did "hold the low back somewhat stiff" but was "able to fluidly bend forward and touch his toes, side bending, posterior bending without much difficulty" and did "not appear to have any limitation of lumbar motion." (Id.). Plaintiff's x-rays of the lumbar spine showed "no evidence of significant degenerative change." (Id.). Dr. Setzler's impression was "mild lumbar degenerative disk disease with lumbar strain, chronic with deconditioning." (Id.). Dr. Setzler instructed Plaintiff to diet and exercise, and he prescribed Mobic and instructed him to return if he had further problems. (Id.). Dr. Setzler noted that Plaintiff needed "[n]othing from an orthopaedic standpoint at this point." (Id.).

On January 3, 2011, Plaintiff returned to Dr. Evans and reported stomach pain and intermittent rectal bleeding for one year. (Id. at 343). Upon examination, Plaintiff reported a pain level of zero out of ten on the pain scale. (Id.). Dr. Evans assessed Plaintiff with abdominal pain, high blood pressure, and intramural small intestinal hemorrhage and prescribed Norvasc for high blood pressure, Ultram and Fioricet for pain, Lipitor for high cholesterol, and Prilosec. (Id. at 344-45).

On February 7, 2011, Plaintiff was seen by Dr. Mark Pita at the Mobile County Health Department. He reported back pain and right hamstring cramping. (Id. at 345). Plaintiff's examination was largely normal. Dr. Pita's treatment notes reflect that Plaintiff was in no acute distress, was not feeling tired or poorly, had no breathing difficulty, no abdominal pain, no back pain, and no localized joint pain. (Id. at 345-46). Plaintiff reported a pain level of two out of ten on that date. (Id. at 346). Dr. Pita assessed Plaintiff as having thigh muscle cramps and high cholesterol and prescribed Crestor, Ibuprofen, and Flexeril. (Id. at 348).

The record reflects that Plaintiff was seen again by Dr. Pita on February 23, 2011 and March 1, 20ll. (Id. at 433-436). During the February 23rd visit, Plaintiff reported problems with his right thigh, and placed his pain at an eight, while during the March visit, he reported bilateral thigh cramping and placed his pain at a three. (Id.). Plaintiff's examinations was largely normal, and an x-ray of Plaintiff's lumbar spine and pelvis was "normal." (Id. at 440). The radiologist's impression was "[n]o significant degenerative abnormality. No fracture." (Id.). Dr. Pita's assessment was abdominal pain, high blood pressure, high cholesterol, and backache. (Id. at 439). During the February visit, Dr. Pita gave Plaintiff an injection of Toradol for pain and instructed him to continue his Lipitor, Neurontin, Ultram, Elavil, and Zanaflex as needed. (Id.). During the March visit, Dr. Pita prescribed Elavil and Neurontin. (Id. at 436).

On April 27, 2011, Plaintiff presented to the emergency room at USA Medical Center with complaints of back pain that radiated to his right leg and with complaints of blood in his stool. (Id. at 400, 402). Plaintiff was diagnosed with L3-L4 spinal stenosis, chronic back pain, and gastroenteritis. (Id. at 400). A CT scan of Plaintiff's abdomen and pelvis was normal except for evidence of a periumbilical hernia, mild degenerative changes in the thoracolumbar spine, and mild atherosclerosis. (Id. at 407-08). Plaintiff was discharged with prescriptions for Lortab

and Valium. (Id. at 400-01).

On May 2, 2011, Plaintiff returned to the emergency room at USA Medical Center with complaints of abdominal pain and blood in his stool. (Id. at 388). His physical examination was normal, except for abdominal pain which Plaintiff reported as a ten out of ten on the pain scale. (Id.). The examining physician noted that Plaintiff was in no acute distress, and x-rays of Plaintiff's abdomen and chest were normal and showed "[n]o radiographic evidence of acute abdominal or chest pathology." (Id. at 386, 392). Plaintiff was diagnosed with chronic back pain and constipation and discharged home with instructions to take Miralax for constipation and Ibuprofen for pain. (Id. at 386-87).

On June 1, 2011, the Agency referred Plaintiff to Dr. Dixie Kidd for a consultative physical examination. (Id. at 366). Plaintiff reported to Dr. Kidd that he was seeking disability because he has abdominal pain from a gunshot wound that went into his abdomen and then out his right flank.[8] (Id.). Plaintiff also reported having low back pain since September 2010 after someone attacked him and put their knee into his back. (Id.). Dr. Kidd's physical examination proved to be normal with respect to Plaintiff's head, ears, eyes, nose, throat, neck, lungs, and heart, and Plaintiff's abdomen was normal except for mild periumbilical tenderness and a scar. (Id. at 367). Dr. Kidd noted that Plaintiff's muscle strength was 5/5 bilaterally in the upper and lower extremities and that his sensation and deep tendon reflexes were normal. (Id.). Dr. Kidd noted some mild tenderness across Plaintiff's lower back, and Plaintiff's range of motion was largely within normal limits with respect to his spine, shoulders, elbows, forearms, hips, knees, ankles, hands, wrists, and fingers. (Id. at 367-8). He indicated "poor effort" by Plaintiff when testing his lumbar spine. (Id.). Dr. Kidd also found that Plaintiff's dexterity, grip strength,

[8] Plaintiff listed his medications as Norvasc, Lipitor, Hydrocodone, Diazepam, and Ibuprofen. (Tr. 366).

heel/toe walk, squat, and gait were normal.  (Id. at 369).  Dr. Kidd's assessment was status post

gunshot wound to the abdomen with chronic abdomen pain, low back pain after trauma,

hypertension, and hypercholesterolemia.  (Id. at 367).

Dr. Kidd also completed a Medical Source Statement in which he opined that Plaintiff

can continuously lift/carry ten pounds and can frequently lift/carry twenty pounds.[9]  (Id. at 370).

In addition, Dr. Kidd opined that Plaintiff can sit, stand, or walk for one hour at a time, can sit

for a total of three hours a day, can stand for a total of one hour a day, can walk for a total of one

hour a day, and must lie down for a total of three hours a day.  (Id. at 371).  However, Dr. Kidd

expressly noted that these opinions were based on "subjective" information.  (Id.).  Dr. Kidd also

found that Plaintiff does not require the use of a cane to ambulate.  (Id.).  Dr. Kidd opined that

Plaintiff can occasionally climb stairs and ramps, stoop, kneel, crouch, crawl, handle exposure to

unprotected heights, dust, odors, fumes, and extreme temperatures, and operate a motor vehicle.

(Id. at 373-74).  In addition, Dr. Kidd found that Plaintiff can continuously reach, handle, and

finger with both hands, can continuously feel, push, and pull with his left hand, and can

occasionally feel, push, and pull with his right hand.  (Id. at 372).  Dr. Kidd also found that

Plaintiff can perform activities such as shopping, traveling without a companion, ambulating

without assistance, walking a block at a reasonable pace on rough surfaces, using standard public

transportation, climbing a few steps at a reasonable pace with the use of a single hand rail,

preparing a simple meal and feeding himself, caring for his personal hygiene, sorting, handling

and/or using paper and files.  (Id. at 375).  Dr. Kidd opined that Plaintiff's limitations began in

August 2009 and then got worse in September 2010, and he expects them to last more than

twelve months.  (Id.).

---

[9] The ALJ found that Plaintiff can perform "light work," which involves frequent lifting or
carrying of objects weighing up to ten pounds.  20 CFR §§ 404.1567 and 416.967.  (Tr. 25).

On June 20, 2011, Plaintiff returned to Dr. Pita and reported pain in his legs, but no abdominal pain. Plaintiff requested Lortab and described his pain level as a four out of ten. (Id. at 429-30). Plaintiff's physical examination was largely normal, and Dr. Pita's assessment was backache and sciatica. (Id. at 432). Dr. Pita prescribed Neurontin, Ultram, and Naproxen Sodium, as needed for pain. (Id. at 433).

On July 2, 2011, Plaintiff presented to the emergency room at USA Medical Center with complaints of low back pain and shooting pain down his legs. (Id. at 379, 381). An examination revealed right paraspinal tenderness. The treatment notes reflect that Plaintiff was ambulatory, in no acute distress, and had no deficits in strength in his extremities. (Id.). He was diagnosed with "back pain with radiculopathy" and discharged home in satisfactory condition with Prednisone, Mobic, and Lortab. (Id. at 380, 383). Plaintiff was also instructed to apply warm compresses to his back twice a day and to follow up with an orthopedist or his primary care physician. (Id. at 380). The treatment notes reflect that Plaintiff was "ambulating out of ER [with] even and steady gait." (Id. at 383).

On July 8, 2011, Plaintiff was seen by Dr. Pita at the Mobile County Health Department. (Id. at 427). Plaintiff reported low pain that was radiating and sharp and leg pain. Plaintiff rated his pain as a five out of ten on the pain scale, and reported no abdominal pain. (Id.). Again, his examination was essentially normal, and Dr. Pita prescribed Toradol, Lyrica, Elavil, and Tylenol. (Id. at 427-28).

On August 16, 2011, Dr. Pita completed a Physical Capacities Evaluation form, in which he opined that, as a result of "sciatica," Plaintiff can lift and/or carry only ten pounds occasionally and five pounds frequently during a normal work day; he can sit for a total of two hours a day; he can stand and/or walk for a total of one hour per day; he can perform fine

manipulation/finger dexterity frequently; he can push and pull with arm and leg controls occasionally; he can perform gross manipulation/grasp, twist, and handle occasionally; he can reach overhead occasionally; he can climb stairs rarely; he can operate motor vehicle rarely; he can work around hazardous machinery rarely; and he can never bend or stoop or be exposed to environmental problems.  (Id. at 446).  Dr. Pita further opined that Plaintiff is likely to be absent from work, as a result of his sciatica, more than four days per month.  (Id.).  Dr. Pita also completed a Clinical Assessment of Pain form, opining that Plaintiff's pain is present to such an extent as to be distracting to the adequate performance of daily activities or work, that physical activity greatly increases Plaintiff's pain to such a degree as to cause distraction from tasks or total abandonment of tasks, and that his medication may present some limitations but not to such a degree as to create serious problems in most instances.  (Id. at 447).  This is the final treatment note in the record.

### 2.    Issues

#### a. Whether substantial evidence supports the ALJ's RFC assessment?

Plaintiff argues that the ALJ's finding that he retained the RFC to perform a range of light work, with the stipulation that he can sit no longer than thirty minutes at one time and engage in no more than occasional stooping or bending, is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred in failing to accord substantial weight to the opinions of Dr. Pita, Plaintiff's treating physician, and that once the ALJ devalued Dr. Pita's opinions, there was no opinion evidence from an examining or treating physician to support the ALJ's RFC.  (Doc. 14 at 2).  The Commissioner counters that the ALJ's decision is supported by substantial medical evidence in the record; thus, even in the absence of an RFC assessment from a treating or examining physician, there is no error.   The Court agrees with Defendant that

Plaintiff's claim is without merit.

First, the Court finds that the ALJ had good cause to discredit Dr. Pita's opinions regarding Plaintiff's limitations as expressed in the August 2011 Physical Capacities Evaluation and Clinical Assessment of Pain forms and that the ALJ sufficiently articulated his reasons for doing so. (Tr. 26, 446-47). "It is well-established that the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (citations and internal quotations omitted). The ALJ may discount the treating physician's report where it is not accompanied by objective medical evidence, is wholly conclusory, or is contradicted by the physician's own record or other objective medical evidence. Id.; see also Green v. Social Sec. Admin., 223 Fed. App'x 915, 922-23 (11th Cir. 2007) (unpublished) (ALJ had good cause to devalue a treating physician's opinion where it was inconsistent with the objective medical evidence, as well as plaintiff's testimony). "When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the: (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence and explanation supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that tend to support or contradict the opinion." Weekley v. Commissioner of Soc. Sec., 486 Fed. App'x 806, 808 (11th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(c)). When an ALJ articulates specific reasons for declining to give a treating physician's opinion controlling weight, and the reasons are supported by substantial evidence, there is no reversible error. See Forrester v. Commissioner of Social Sec., 455 Fed. App'x 899, 902 (11th Cir. 2012) (unpublished) ("We have held that an ALJ does not need to give a treating

physician's opinion considerable weight if evidence of the claimant's daily activities contradict the opinion."). Indeed, an ALJ "may reject any medical opinion, if the evidence supports a contrary finding." Id., 455 Fed. App'x at 901. Although the ALJ must evaluate the treating physician's opinion "in light of the other evidence presented," "the ultimate determination of disability is reserved for the ALJ." Green, 223 Fed. App'x at 923 (citing 20 C.F.R. §§ 404.1513, 404.1527, 404.1545).

In this case, Dr. Pita opined that, as a result of Plaintiff's "sciatica," he can frequently lift or carry only five pounds during a normal work day, sit for a total of only two hours a day, stand and/or walk for a total of only one hour per day, and is likely to be absent from work more than four days per month. (Id. at 446). In addition, Dr. Pita opined that Plaintiff experiences pain to such a degree that it is distracting for him to perform work or daily activities and that physical activity greatly increases the level of pain to such a degree as to cause distraction or total abandonment of tasks. (Id. at 447). As the ALJ found, these opinions are wholly unsupported by any evidence in the record, including Dr. Pita's own treatment records. Dr. Pita's treatment records show that during the six months that he treated Plaintiff in 2011, Plaintiff presented frequently with complaints of back pain, right hamstring cramping, and abdominal pain, and each time, the results of Dr. Pita's physical examination were largely normal. (Id. at 345-46, 427, 429-30, 433-34, 437). During Plaintiff's office visits, Plaintiff generally described mild pain, and reported pain levels as low as two, three, and four out of ten. Only once did Plaintiff report pain registering a seven out of ten. (Id. at 346, 429-30, 433-34, 437). In addition, x-rays of Plaintiff's lumbar spine and pelvis during that time period were "normal."[10] (Id. at 440). Dr.

---

[10] Emergency room records from USA Medical Center in April, May, and July 2011 show that Plaintiff presented with complaints of back pain (described on one occasion as a ten out of ten), and blood in his stool. However, physical examinations of Plaintiff and a CT scan of his

Pita ultimately diagnosed Plaintiff with backache and sciatica but repeatedly noted during the six-month treatment period that Plaintiff was in no acute distress during any of his examinations. (Id. at 346, 386, 428, 432, 437).

Furthermore, notwithstanding Dr. Pita's opinion that Plaintiff is incapable of lifting more than five pounds frequently, Dr. Pita never noted any impairment in Plaintiff's upper extremities or any other medical condition that would support such an opinion. Plaintiff himself testified that he is capable of lifting as much as fifteen pounds, and that he continues to work three days a week as a licensed barber. (Id. at 38-39, 41, 44-45). In addition, he testified that he drives, cooks, and helps take care of his father, including lifting him out of the bath tub. (Id. at 42-45). In his Disability Report, Plaintiff further stated that he shops, cleans, does laundry, irons, and makes household repairs. (Id. at 215, 217-18). All of this evidence undermines Dr. Pita's opinion that Plaintiff is unable to work due to excruciating pain.

In addition, Dr. Pita's opinions are inconsistent with the opinions of Dr. Kidd, the consultative examining physician, that Plaintiff had only mild tenderness across his lower back and abdomen, that he had 5/5 muscle strength bilaterally in the upper and lower extremities, that he had normal range of motion in all extremities and his spine, and that he could frequently lift and carry up to twenty pounds. (Id. at 367-69). Although Dr. Kidd also opined that Plaintiff could sit, stand, or walk for no longer than one hour at a time, could sit for a total of only three

---

abdomen and pelvis were normal except for evidence of a periumbilical hernia, mild degenerative changes in the thoracolumbar spine, and mild atherosclerosis. (Tr. 388, 400, 402, 407-08). In addition, x-rays of Plaintiff's abdomen and chest, taken in May 2011, were normal and showed "[n]o radiographic evidence of acute abdominal or chest pathology." (Id. at 392). In July 2011, Plaintiff's physical examination in the emergency room was normal except for right paraspinal tenderness. (Id. at 379). He was instructed to apply warm compresses to his back and to follow up with his primary care physician or an orthopedist. (Id. at 380). His treatment notes also reflect that he was "ambulating out of ER [with] even and steady gait." (Id. at 383).

hours a day, stand for a total of one hour a day, and walk for a total of one hour a day, he expressly stated that these limitations were based entirely on "subjective" information.[11]  (Id. at 371).  Therefore, the ALJ properly gave little weight to that portion of Dr. Kidd's assessment.

In addition, Dr. Pita's opinions are inconsistent with the opinions of Dr. Setzler, Plaintiff's treating orthopedist, who found on October 27, 2010, that Plaintiff was completely intact neurologically with normal reflexes, normal sensation, normal strength, and a negative straight leg raise, that he was "able to fluidly bend forward and touch his toes, side bending, posterior bending without much difficulty" and that he did "not appear to have any limitation of lumbar motion."  (Id. at 449).  Dr. Setzler noted that x-rays of Plaintiff's lumbar spine showed "no evidence of significant degenerative change" and only "mild lumbar degenerative disk disease with lumbar strain, chronic with deconditioning."  (Id.).  Dr. Setzler recommended that Plaintiff begin a diet and exercise program and prescribed Mobic for pain.  (Id.).  Dr. Setzler opined that Plaintiff needed "[n]othing from an orthopaedic standpoint at this point."  (Id.).  Thus, because Dr. Pita's opinions in the Physical Capacities Evaluation and Clinical Assessment of Pain forms are inconsistent with his own treatment notes, as well as the remaining evidence, they were properly discredited by the ALJ and assigned no weight.  (Id. at 26).

Second, the Court rejects Plaintiff's contention that the ALJ's RFC assessment was not based on substantial evidence because, once the ALJ rejected the opinions of Dr. Pita, the record was devoid of an RFC assessment by a treating or examining physician.  "[T]he Eleventh Circuit has not set out a rule indicating that an RFC must be based on the assessment of a treating or

---

[11] The Court rejects Plaintiff's argument that the ALJ should have re-contacted Dr. Kidd for clarification of his use of the word "subjective." (Doc. 14 at 9).  Dr. Kidd's notation is clarified by Plaintiff's treatment records themselves, which are devoid of any objective evidence supporting Dr. Kidd's assessment of the length of time that Plaintiff can sit, stand, or walk, thus making it clear that Dr. Kidd's assessment was based on Plaintiff's subjective complaints and reports, as he expressly stated.

examining physician in every case." <u>Saunders v. Astrue</u>, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). "The ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity." <u>Id.</u> at n.5 (citing <u>Green v. Soc. Sec. Admin.</u>, 223 Fed. App'x 915, 923 (11th Cir. 2007) (unpublished)).

In <u>Green</u>, the Eleventh Circuit affirmed the district court's finding that the ALJ's RFC assessment was supported by substantial evidence where the ALJ properly rejected the treating physician's opinion and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician. <u>Id.</u>, 223 Fed. App'x at 922-24. The court held, "[a]lthough a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." <u>Id.</u>, 223 Fed. App'x at 923 (citing 20 CFR §§ 404.1513, 404.1527, 404.1545); <u>see also</u> <u>Packer v. Astrue</u>, 2013 U.S. Dist. LEXIS 20580, *7, 2013 WL 593497, *2 (S.D. Ala. February 14, 2013) (the fact that no treating or examining medical source submitted a physical capacities evaluation "does not, in and of itself, mean that there is no medical evidence, much less no 'substantial evidence,' to support the ALJ's decision."). Thus, Plaintiff's contention that the absence of an RFC evaluation by a treating or examining physician means that the ALJ's RFC assessment is not based on substantial evidence is simply incorrect.

Moreover, contrary to Plaintiff's assertion, after the ALJ properly discredited the opinions of Dr. Pita, the record still contained the opinions of consultative examining physician, Dr. Kidd, that Plaintiff had only mild tenderness across his lower back and abdomen, that he had full muscle strength bilaterally in his upper and lower extremities, that he had normal range of

motion in all extremities and his spine, and that he could frequently lift and carry up to twenty pounds. (Id. at 367, 370). Thus, Plaintiff's argument that there was no opinion evidence from an examining physician supporting the ALJ's RFC assessment is incorrect for this reason as well.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his impairments. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). Once that decision is made, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet that burden.

As discussed in detail above, while the medical evidence in this case shows that Plaintiff has a history of a gunshot wound to the abdomen with residual low back pain after trauma, it also shows that Plaintiff's condition is not disabling. Plaintiff's medical records reflect that he was successfully treated following his gunshot wound and that in the months and years following his injury, he generally reported only mild pain; his x-rays were normal; his physical examinations were consistently normal; he was repeatedly observed to be in no acute distress; and the treatment recommended by his physicians was consistently conservative. Thus, contrary to Plaintiff's argument, even without an RFC assessment by a treating or examining physician, Plaintiff's treatment records, as well as his activities of daily living as discussed above, support the ALJ's RFC determination that Plaintiff can perform a range of light work.

Based upon a careful review of the record in this case and for the reasons set forth above,

the Court finds that the ALJ's RFC assessment that Plaintiff can perform a range of light work is supported by substantial evidence. Therefore, Plaintiff's claim is without merit.

### b. Whether the ALJ erred in evaluating Plaintiff's complaints of pain?

Plaintiff argues next that the ALJ erred in failing to properly evaluate his complaints of pain pursuant to SSR 96-7p.[12] (Doc. 14 at 11). The Government counters that the ALJ reasonably evaluated all of the evidence of record, including Plaintiff's subjective complaints of pain, that the ALJ identified valid reasons for discounting Plaintiff's subjective statements, and that the ALJ's credibility evaluation is supported by substantial evidence. (Doc. 15 at 8-10). The Court finds that Plaintiff's claim is without merit.

When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician, and evidence of how the pain affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). In a case where a claimant attempts to establish disability through his or her own testimony concerning pain or other subjective symptoms, a three-part pain standard applies. That standard requires: "(1) evidence of an underlying medical condition and either (2) objective medical

---

[12] Plaintiff refers to the following language in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

SSR 96-7p, 1996 SSR LEXIS 4, * 5-6, 1996 WL 374186, *2.

evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Hubbard v. Commissioner of Soc. Sec., 348 Fed. App'x 551, 554 (11th Cir. 2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). The Social Security regulations further provide:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013).

"A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). Stated differently, "if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited." Reliford v. Barnhart, 444 F. Supp. 2d 1182, 1186 (N.D. Ala. 2006). Therefore, once the determination has been made that a claimant has satisfied the three-part pain standard, the ALJ must then turn to the question of the credibility of the claimant's subjective complaints. See Id., 444 F. Supp. 2d at 1189 n.1 (the pain standard "is designed to be a threshold determination made prior to considering the plaintiff's credibility."). If a claimant does not meet the pain standard, no credibility determination is required. Id.

In assessing a claimant's credibility, the ALJ must consider all of the claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms

can reasonably be accepted as consistent with the objective medical evidence. See 20 C.F.R. § 404.1528. Such credibility determinations are within the province of the ALJ. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). However, if an ALJ decides not to credit a claimant's testimony about pain, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious as to the credibility finding." Strickland v. Commissioner of Soc. Sec., 516 Fed. App'x 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at 1562); see also Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court). Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce the pain is a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985), vacated on other grounds and reinstated sub nom., Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Nye v. Commissioner of Social Sec., 524 Fed. App'x 538, 543 (11th Cir. 2013) (unpublished).

As discussed above, at his administrative hearing, Plaintiff testified that he can only work part-time because his pain is too severe for him to maintain full-time employment. (Tr. 40). Plaintiff further testified that he experiences constant back pain that goes down his leg and that he also has stomach pain, which forces him to sit or lie down up to three times a day for thirty to forty minutes at a time. (Id. at 40, 42, 46-47). Plaintiff described his pain level as an eight out

of ten on the pain scale on a daily basis. (Id. at 44).

Relying on the treatment records and objective evidence in this case, the ALJ concluded that Plaintiff's impairment could reasonably be expected to cause his alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they are inconsistent with the RFC. (Tr. at 25). Specifically, the ALJ found that Plaintiff's statements related to the disabling nature of his pain in his abdomen, back, and legs from his gunshot injury in 2008 were inconsistent with his treatment records and his own testimony. (Id. at 26). The Court agrees.

First, as determined by the ALJ, there is no question that Plaintiff sustained injuries to his left abdomen in 2008 from a gunshot wound. (Id. at 267). However, Plaintiff's treatment records show that the surgery to repair the injury to his small bowel was successful and that he experienced progressive healing and received good reports on follow up examinations. (Id. at 268). For three years following his surgery, Plaintiff's treatment notes show that he generally rated his pain between zero and four on the pain scale, and his treating physicians repeatedly noted that he was in no acute distress. (Id. at 276, 278, 283, 290, 292, 343, 345-46, 349-52, 356, 429-430, 433-34). In addition, Plaintiff's physical examinations were largely normal, and x-rays of his abdomen, spine, and pelvis were "normal" or "unremarkable."[13] (Id. at 293, 340-41, 351-53, 356, 430-32, 440).

Plaintiff's activities of daily living also belie his statements regarding the severity of his pain. As set forth above, Plaintiff is able to drive, cook, help take care of his father, including

---

[13] Dr. Evans noted in November 2009 that Plaintiff's abdomen revealed no abnormalities, except for a scar, and Dr. Setzler noted in October 2010 that Plaintiff did not have any limitation with respect to lumbar motion, that he was completely intact neurologically with normal reflexes, normal sensation, and normal strength, and that he was able to fluidly bend forward, touch his toes, and bend side to side without much difficulty. (Tr. 282-83, 449).

lifting him out of the bath tub, shop, clean, do laundry, iron, make household repairs, and maintain part-time employment. (Id. at 42-45, 215, 217-18).

After a careful review of the record, the undersigned finds that the ALJ's credibility finding is supported by substantial evidence and that his reasons for discrediting Plaintiff's testimony were sufficiently articulated in the decision. As noted above, this Court may not decide the facts anew, reweigh the evidence, or substitute its judgment but must accept the factual findings of the Commissioner where they are supported by substantial evidence and based upon the proper legal standards. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) ("the findings and decision of the Secretary are conclusive if supported by substantial evidence."); accord Hand, 761 F.2d at 1549. Therefore, Plaintiff's claim that the ALJ erred in failing to properly evaluate his testimony with regard to the severity of his pain is without merit.

**V.**     **Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **26th** day of **March, 2014.**

_____
      **/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
